FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 AUG 24 PM 2:42

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| DEMARCUS WHITAKER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 118-141 |
| | * | |
| THE BOARD OF REGENTS OF THE | * | |
| UNIVERSITY SYSTEM OF GEORGIA, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

**O R D E R**

Before the Court are two motions to dismiss. (Docs. 30, 38.) In its September 27, 2019 Order denying the original motion to dismiss, the Court dismissed three defendants — Brooks Keel, Robert Boehmer, and James Rush — and allowed Plaintiff DeMarcus Whitaker ("Plaintiff") an opportunity to file an amended complaint not amounting to a shotgun pleading. (Sept. 27, 2019 Order, Doc. 24, at 2, 4-5.) In his Amended Complaint, Plaintiff named two new defendants — Clay Sprouse and Angelica Hardison ("New Defendants"). (Compare Compl., Doc. 1, at 1, with Am. Compl., Doc. 25, at 1.) On October 25, 2019, the remaining original defendants ("Original Defendants") filed a motion to dismiss that counsel states should apply to New Defendants. (Original Defs.' Mot. to Dismiss, Doc. 30, at 1 n.1.) On November 12, 2019, New Defendants filed a motion to dismiss "adopti[ing] the arguments

already made on behalf of the [Original] Defendants" and raising new arguments. (New Defs.' Mot. to Dismiss, Doc. 38; Br. Supp. New Defs.' Mot. to Dismiss, Doc. 38-1, at 1.) The Court evaluates both motions to dismiss in conjunction. For the following reasons, both motions to dismiss (Docs. 30, 38) are **GRANTED**.

## I. BACKGROUND[1]

In 2016, Plaintiff attended Augusta University ("AU"), a unit of the Board of Regents of the University System of Georgia ("BOR"). (Am. Compl., ¶¶ 65, 66); see GA. CONST. art. VIII, § 4, ¶ 1(b); O.C.G.A. § 20-3-1; McCafferty v. Med. Coll. of Ga., 287 S.E.2d 171, 173-74 (Ga. 1982), *overruled on other grounds by* Self v. City of Atlanta, 377 S.E.2d 674 (Ga. 1989). During the Fall 2016 semester, Plaintiff and Jane Roe[2] were students and lab partners in a biology class taught by Defendant Wear. (Am. Compl., ¶ 76.) In September, Ms. Roe reported to Defendant Wear that Plaintiff "had sexually harassed and touched her without her consent." (Id. ¶ 87.) Defendant Wear sent the report of Ms. Roe's allegation to AU's Title IX coordinator, Defendant Reed. (Id. ¶ 90.) On October 13, 2016, AU issued a "no contact" order to Ms. Roe and Plaintiff via their student email accounts. (Id. ¶¶ 92,

---

[1] Plaintiff's Amended Complaint is ninety-nine pages with almost 200 paragraphs comprising the "factual allegations common to all claims." (Am. Compl., at 21, ¶¶ 75-266.) In drafting this section, the Court parses only essential details relevant to addressing the federal claims.
[2] Jane Roe is not a defendant.

2

94.)  Ms. Roe and Plaintiff continued to work together as lab partners until October 25, 2016, when Plaintiff became aware of the "no contact" order and "demanded that their lab groups be changed."³  (Id. ¶¶ 94, 96.)  Plaintiff alleges Ms. Roe spoke to him in violation of the "no contact" order three times — on October 25, 2016; November 8, 2016; and November 15, 2016.  (Id. ¶¶ 105, 108, 114.)  On the same day as the November 8, 2016 violation, Plaintiff reported it to Defendants Reed and Thurman, the Assistant Dean of Student Life and Enrollment and an investigator of Ms. Roe's sexual harassment claim.  (Id. at 1, ¶¶ 2, 5, 113.)  During the Fall 2016 semester, Plaintiff "drop[ped] out of his Biology class and fail[ed] his Macroeconomics class due to the unnecessary stress."  (Id. ¶ 267.)

Many of the Defendants, including Defendants Thurman and Reed, were involved in processing and investigating Ms. Roe's complaint of sexual harassment.  (See, e.g., ¶¶ 121, 125-130, 186.)  Plaintiff believed Defendants Thurman and Reed were biased in their investigation and, on January 12, 2017, Plaintiff brought a bias challenge against both individuals.  (Id.)  Defendant Woods, the Director of Human Resources and Career Services and Title IX coordinator of East Georgia State College,⁴ conducted the bias

---

³ Plaintiff did not see the email but became aware of the allegation on October 25, 2016, when he met with Defendant Reed.  (Am. Compl. ¶ 94.)
⁴ Like AU, East Georgia State College is a unit of the BOR.  (Am. Compl., ¶ 66.)

3

investigation and "returned a finding of no bias." (Id. at 1, ¶¶ 23, 25, 186, 189.)

On May 8, 2017, a hearing was held concerning Ms. Roe's claim that Plaintiff sexually harassed her. (See id. ¶ 88.) Although Plaintiff takes issue with some of the Defendants' and Ms. Roe's conduct at the hearing, "[t]he hearing panel found [Plaintiff] 'Not Responsible' for sexual harassment." (Id. ¶ 215; see id. ¶¶ 88-89, 91, 202-214.)

AU did not begin to investigate Plaintiff's report against Ms. Roe for violating the "no contact" order until after it resolved Ms. Roe's sexual harassment claim against Plaintiff. (Id. ¶ 229.) At that point, Ms. Roe had graduated and AU declined to fully investigate the matter. (Id. ¶ 237.) Plaintiff challenges this reasoning arguing that AU's Student Misconduct policy extends to conduct that "is not discovered until after a degree is awarded." (Id. ¶ 238.)

Plaintiff states he and his wife divorced "due to the false allegations" and he "ceased attending the University due to retaliation." (Id. ¶ 51.) On August 31, 2018, Plaintiff brought this action. (See generally Compl.) In his Amended Complaint, Plaintiff raises seven federal claims (Counts 1-7) and twenty-seven state law claims (Counts 8-34). For the foregoing reasons,

the Court dismisses Plaintiff's federal claims[5] and declines to exercise supplemental jurisdiction over the state law claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice" of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,[6] to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has

---

[5] Plaintiff originally brought a Title VI claim but asserts no such count in his amended complaint. (Compare Compl., ¶¶ 269-270, with Am. Compl.)
[6] The court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom "in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted). Conclusory allegations, however, "are not entitled to an assumption of truth — legal conclusions must be supported by factual allegations." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court may not reasonably infer the defendant is liable when the well-pleaded facts fail to show "more than the mere possibility of misconduct." Id. at 679; see Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012) ("[F]actual allegations must be enough to raise a right to relief above the speculative level.").

### III. DISCUSSION[7]

The Court has original jurisdiction over the federal claims in this case. 28 U.S.C. § 1331. As such, the Court begins by addressing the federal claims.

**A. Count I: Title IX Sex Discrimination**

Plaintiff alleges that Defendants BOR, Reed, Thurman, Wear,[8] Woods, Sprouse,[9] and Hardison[10] are liable under Title IX for sex discrimination under the following theories: selective enforcement, deliberate indifference, and erroneous outcome. (Am.

---

[7] Although the Amended Complaint maintains many traits of a shotgun pleading, the Court addresses the motions to dismiss the Amended Complaint as best it can.
[8] The Court uses the spelling of Defendant Wear's name within the caption of the Amended Complaint. (Am. Compl., at 1; see also Def. Wear's Executed Waiver of Service, Doc. 12.)
[9] Defendant Sprouse is the Interim Vice President for Audit, Compliance, Ethics and Risk Management and the Chief Audit Officer. (Am. Compl., at 1.)
[10] Defendant Hardison is the Enterprise Privacy Manager and Compliance Analyst. (Am. Compl., at 1.)

Compl., ¶ 269.) Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[] . . . ." 20 U.S.C. § 1681(a). Plaintiff's claim under each theory fails as a matter of law.

Although neither the Supreme Court nor the Eleventh Circuit have adopted the selective enforcement test for university disciplinary proceedings, see Doe v. Valencia Coll., 903 F.3d 1220, 1236, 1236 n.13 (11th Cir. 2018), the Court finds that, assuming its adoption, it would fail as a matter of law. To state a selective enforcement claim, "Plaintiff must allege sufficient facts to permit the plausible inference that a 'similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender.'" Doe v. Rollins Coll., 352 F. Supp. 3d 1205, 1211 (M.D. Fla. 2019) (quoting Doe v. Cummins, 662 F. App'x 437, 452 (6th Cir. 2016); Mallory v. Ohio Univ., 76 F. App'x 634, 641 (6th Cir. 2003)). Plaintiff brings his selective enforcement claim on his complaint that Jane Roe's violation of the no-contact order was not fully investigated in contrast to Jane Roe's sexual harassment complaint. For the reasons discussed in Section III(E), *infra*, Plaintiff fails to show how his offered comparator, Ms. Roe, was similarly situated in this situation and how any differential treatment was based on Plaintiff's sex.

7

A deliberate indifference claim under Title IX requires the plaintiff to show the Title IX funding recipient was "deliberately indifferent to sexual harassment, of which [it] had actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650 (1999). The Court swiftly dismisses this claim because Plaintiff does not claim he was the victim of sexual harassment.

Lastly, the Court quickly deals with Plaintiff's Title IX claim under the erroneous outcome theory. Even if we assume the erroneous outcome test applies, see Valencia Coll., 903 F.3d at 1236, the test requires Plaintiff to show he was "innocent and wrongly found to have committed an offense." Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994). Plaintiff, however, was exonerated; thus, not found to have committed an offense.

**B. Count II: Retaliation Under Title IX**

Courts analyze retaliation claims under Title IX the same as those under Title VII. Kocsis v. Fla. State Univ. Bd. of Trs., 788 F. App'x 680, 686, 686 n.4 (11th Cir. 2019). As such, a student makes a retaliation claim under Title IX by showing "(1) that []he engaged in statutorily protected expression; (2) that []he suffered an adverse action; and (3) that there is some causal relationship between the two events." Id. at 686 (citation

8

omitted). "An individual engages in protected expression when []he opposes practices made unlawful by the relevant statute (the opposition clause). . . ."[11] Id. (citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999)).

The only reported instances of opposition Plaintiff identifies in support of this claim[12] are that (1) he reported to Defendant Woods that he believed he was being investigated unfairly in response to Ms. Roe's sexual harassment claim, and (2) he told Mr. Rush he believed his counterclaim was being treated differently than Ms. Roe's. (Am. Compl., ¶ 271.) Plaintiff states the alleged adverse action to his first claim of discrimination was that "Defendant Woods returned a finding of no bias without a rationale." (Id.) The alleged adverse action to his second claim of discrimination was Mr. Rush telling him to "sue us." (Id.)

Plaintiff offers no allegation that he conveyed his belief that his sex generated unfair treatment. Nevertheless, neither allegedly adverse action establishes a prima facie case of sex discrimination. The adverse action element requires the "injury or harm" to "be materially adverse, meaning that it would . . . 'dissuade[] a reasonable individual from making or

---

[11] Protected conduct can also include "participat[ing] in any manner in an investigation under the relevant statute (the participation clause)." Kocsis, 788 F. App'x at 686. Plaintiff declines to allege his participation in a Title IX investigation was the cause of any alleged discrimination; thus, there is no basis for employing the participation clause.

[12] "[R]efusing to get a medical statement" and raising a counterclaim against Ms. Roe are not actions opposing discrimination. (Am. Compl., ¶ 271.)

9

supporting a charge of discrimination.'" Kocsis, 788 F. App'x at 686 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); see also Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008). The causation element requires showing the university decision makers knew about his protected conduct and that conduct was not wholly unrelated to the adverse action. Bowers v. Bd. of Regents of Univ. Sys. of Ga., 509 F. App'x 906, 911 (11th Cir. 2013) (citing Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002)).

Defendant Woods finding Plaintiff's investigators were not biased is not materially adverse nor was it caused by Plaintiff's speech. First, after investigating Ms. Roe's claim against Plaintiff, Plaintiff was ultimately found innocent. Second, the investigation and alleged bias began prior to any alleged protected speech by Plaintiff; thus, precluding any conclusion that Plaintiff's speech caused investigation bias. Cf. Garrett v. Univ. of S. Fla. Bd. of Trs., ___ F. Supp. 3d ___, 2020 WL 1433059, at *14-15 (M.D. Fla. Mar. 24, 2020) (discussing how the initiation of an investigation in retaliation for opposition could potentially constitute a materially adverse action).

Likewise, Plaintiff's counterclaim was allegedly not being investigated properly prior to Plaintiff's alleged protected speech; thus, could not have been caused by Plaintiff's speech. Being told to "sue us" is also not a sufficient harm or injury to

Plaintiff as required by the statute. Cf. <u>Carey v. O'Reilly Auto. Stores, Inc.</u>, No. 18-81588-CIV-ROSENBERG/REINHART, 2019 WL 3412170, at *8 (S.D. Fla. May 31, 2019) (finding, in Title VII retaliation claim, the plaintiff-employee adequately showed an adverse employment action when the employer's failure to investigate her complaint of sexual harassment lead to the plaintiff-employees' discharge).

As stated in Defendants' motion, being "charged with a false charge of sexual harassment" is materially harmful, however, Ms. Roe brought that charge. (Br. Supp. Original Defs.' Mot. to Dismiss, Doc. 30-1, at 10.) No Defendant brought the false charge of sexual harassment. Plaintiff's claim of retaliation fails as a matter of law.

### C. Counts III and IV: Section 1985 Conspiracy Against Rights and Failure to Prevent Conspiracy

Plaintiff raises a 42 U.S.C. § 1985 claim asserting Defendants BOR, Reed, Thurman, Woods and Sprouse conspired to interfere with his civil rights (Count III) and a 42 U.S.C. § 1986 claim that Defendants BOR and Sprouse failed to prevent a conspiracy (Count IV). (Am. Compl., ¶¶ 272-73.) The only potentially applicable subsection of Section 1985 is subsection (3), which provides a claim for conspiring to deprive a person of rights or privileges. Section 1985(3) requires: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,

11

any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001).

First, "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation," Dickerson v. Alachua Cty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000), "because the organization and its employees are treated as a single legal actor," Nassar v. Fla. Dep't of Agric., 754 F. App'x 903, 907 (11th Cir. 2018). This doctrine applies to governmental entities. Dickerson, 200 F.3d at 767 (citing Chambliss v. Foote, 562 F.2d 1015 (5th Cir. 1977)). As such, Defendant BOR and its employees cannot conspire as a matter of law.

Second, for reasons contained within this Order, Plaintiff's other civil rights claims fail on the merits. As such, Plaintiff has not been "deprived of any right or privilege of a citizen of the United States," and Plaintiff's conspiracy claim necessarily fails. Denney, 247 F.3d at 1190 ("Having concluded that Plaintiff['s] substantive claims fail on the merits, their conspiracy claim fails as well . . . ."); see also Twomey v. Tuscaloosa Cty, No. 7:18-cv-01653-TMP, 2019 WL 2325945, at *5 (N.D.

Ala. May 31, 2019) ("To plead a conspiracy under Section 1985 brought pursuant to Section 1983[,] a plaintiff must show that the defendants denied him a constitutional right and that the defendants agreed to deny the plaintiff's rights.").

For the foregoing reasons, Plaintiff's conspiracy claim fails. Consequently, Plaintiff's failure to prevent a conspiracy claim must also fail.

### D. Count V: Fourteenth Amendment Due Process Violation

Plaintiff also brings procedural and substantive due process claims. (Am. Compl., ¶ 274.)

#### 1. Procedural Due Process

Procedural due process is a guarantee whereby the state may not deprive a person of life, liberty, or property without providing appropriate procedural safeguards. Daniels v. Williams, 474 U.S. 327, 331 (1986). Plaintiff's procedural due process claim fails on its face because Plaintiff was not deprived of any life, liberty, or property interest. Plaintiff was accused of sexual harassment, provided a hearing, and exonerated. Construing Plaintiff's complaint liberally, any claimed reputation harm — "apart from some more tangible interests" — "is not a protected liberty interest within the meaning of the due process clause." Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1296 (11th Cir. 2003) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)); see also Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000)

13

("We have said that — although damage to reputation, standing alone, does not provide a basis for an action under . . . [Section] 1983 — when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under [S]ection 1983.").

Additionally, Plaintiff cannot sustain a procedural due process claim that he was deprived of his life, liberty, or property interest when the school refused to charge and discipline Jane Roe for violating the no-contact order. Plaintiff has not shown, and the Court is unable to see, how Plaintiff has a cognizable liberty interest in another student being disciplined.

2. Substantive Due Process

To establish a substantive due process claim, "a plaintiff must show that he . . . 'was deprived of a federal right by a person acting under color of state law.'" Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). The Fourteenth Amendment's "Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

Plaintiff does not specify the fundamental right Defendants violated. Because Plaintiff later voluntarily dropped out of

14

school, the Court generously construes his claim as being that his right to continued enrollment at a public university was infringed. As a matter of law, however, this claim fails because "students at a public university do not have a fundamental right to continued enrollment." Valencia Coll., 903 F.3d at 1235-36 (citing, among others, Plyler v. Doe, 457 U.S. 202, 221 (1982)) (affirming district court's decision that the plaintiff failed to state a substantive due process claim by arguing his right to continued enrollment was violated "when the school acted in an arbitrary and capricious manner during his disciplinary proceedings").

### E. Count VI: Fourteenth Amendment Equal Protection Clause Violation

Plaintiff claims Defendant BOR discriminated against him based on his sex in violation of the Fourteenth Amendment's Equal Protection Clause. (Am. Compl., ¶ 275); U.S. CONST. amend. XIV, § 1; 42 U.S.C. § 1983. Plaintiff's Equal Protection Clause argument is that he "did not receive the same treatment as Jane Roe in the charge of sexual harassment against him." (Am. Compl., ¶ 275.) "[T]he Equal Protection Clause requires government entities to treat similarly situated people alike." Campbell v. Rainbow City, 434 F.3d 1306, 1313 (11th Cir. 2006). A violation of the Equal Protection Clause is not just that defendants treated a plaintiff differently than other persons; it requires that the differential treatment "was motivated by an intent to

discriminate." Elston v. Talladega Cty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993); see also McCleskey v. Kemp, 481 U.S. 279, 292 (1987). For a plaintiff to show intentional discrimination, courts employ the same legal analysis used in Title VII disparate treatment claims. Lewis v. City of Union City, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019).

Under Title VII's framework, a plaintiff establishes a prima facie case by, in part, showing how "similarly-situated students outside the protected class [were treated] more favorably." Brown v. Chattahoochee Tech. Coll., No. 1:05-CV-1454-JOF, 2006 WL 2583688, at *2 (N.D. Ga. Sept. 5, 2006); see also Santos v. Hutto, No. 2:09-CV-135-TMH [WO], 2009 WL 1405518, *1 (M.D. Ala. May 19, 2000) (citing Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001)) (stating that to make out an equal protection clause claim "a plaintiff must, at the very least, allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on a constitutionally protected interest"). The Eleventh Circuit recently clarified the similarly-situated standard requires comparators to be "similarly situated in all material respects." Lewis, 918 F.3d at 1218.

Leniently construing Plaintiff's Complaint, the Court finds Plaintiff references three occasions of discrimination: (1) When the individuals investigating Ms. Roe's sexual harassment claim

seemed to favor Ms. Roe over him; (2) When his bias claim was, as alleged, not properly investigated; (3) When his complaint that Jane Roe violated the no-contact order was not investigated. For each situation, however, Ms. Roe is not similarly situated to Plaintiff, and Plaintiff fails to allege the differential treatment was based on Plaintiff's sex.

For differential treatment during the investigation of the sexual harassment claim, Plaintiff fails to show Plaintiff and Ms. Roe were similarly situated. To state the obvious, Jane Roe was the accuser and Plaintiff was the accused. The facts that "Jane Roe was allowed to make false statements during the hearing" and "Defendant Thurman and Reed gave false statements during the hearing favoring Jane Roe" (Am. Compl., ¶ 275), fail to support an Equal Protection Clause claim because there is no evidence of different treatment of similarly situated individuals.

Regarding Plaintiff's bias claim, Plaintiff points to no other individual who brought a bias claim. Thus, Plaintiff altogether fails to name a comparator here, and the Court has no evidence by which to find Plaintiff was discriminated against throughout the course of the investigation of his bias complaint.

Lastly, Plaintiff seems to argue he was discriminated against when his complaint that Jane Roe violated the no-contact order received insufficient investigation compared to Jane Roe's complaint of sexual harassment. Plaintiff, again, however, fails

17

to show Jane Roe was similarly situated to him. A similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff." Lewis, 918 F.3d at 1227. First, the complaints themselves differed. Plaintiff offers no legal support for finding students who file any type of complaint are automatically similarly situated. (See Pl.'s Resp. Opp'n Original Defs.' Mot. to Dismiss, Doc. 37, at 7, 17.[13]) Second, Jane Roe had already graduated, which lead the university to decline to pursue the complaint. Even if that reasoning potentially misaligns with Augusta University's policy, it shows that the parties were not similarly situated.

Ultimately, if Ms. Roe can be considered a comparator here, Plaintiff fails to allege the differential treatment was on account of his sex.

> Conclusory assertions concerning bias and discriminatory intent are insufficient to establish gender bias at the pleading stage. . . . Rather, plaintiffs must allege facts that support a plausible inference of bias and causation — for instance "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."

Rollins Coll., 352 F. Supp. 3d at 1209 (quoting Yusuf, 35 F.3d at 715) (footnote omitted) (finding the plaintiff met his burden to plead sex bias by pointing to, among other things, additional accusations that the university investigator was biased).

---

[13] The Court cites to the PDF page numbers as supplied by CM/ECF.

Plaintiff points to no alleged facts that tend to show Plaintiff's sex motivated any defendants' action. As such, Plaintiff's Equal Protection Clause claim fails as a matter of law.

### F. Count VII: Section 1983 Fifth Amendment Self-Incrimination Clause Violation

Plaintiff raises a Fifth Amendment claim because "Defendant Reed stated that not responding to the investigation report against him meant that she would go by whatever was written against him within it." (Am. Compl., ¶ 276.) The Fifth Amendment states, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. No criminal proceedings were initiated against Plaintiff. Thus, Plaintiff had no right against self-incrimination. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (stating that the Fifth Amendment "does not preclude [an adverse] inference where the privilege is claimed by a party to a [c]ivil cause").

### G. State Law Claims

In addition to the federal claims, Plaintiff asserts numerous state law claims. With no surviving federal claims, the current action's posture implicates 28 U.S.C. § 1367. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(b)(3). "[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). For that reason, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004). Based on the foregoing, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the state law claims are **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss (Docs. 30, 38) are **GRANTED**. **IT IS HEREBY ORDERED** that Plaintiff's federal claims are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over his state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE.**

**ORDER ENTERED** at Augusta, Georgia, this 24th day of August, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA